IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ROBERT OLLIE, #B-87455** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 15-cv-1313-SMY |
| | ) |
| **IDOC,** | ) |
| **SALVADOR GODINEZ,** | ) |
| **MICHAEL ATCHINSON,** | ) |
| **RICHARD HARRINGTON,** | ) |
| **RYAN DAVIS,** | ) |
| **TIMOTHY VEATH,** | ) |
| **and DARRIN HUNTER,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff, currently incarcerated at Hill Correctional Center ("Hill"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claims arose during his confinement at Menard Correctional Center ("Menard"), Pontiac Correctional Center ("Pontiac") and Stateville Correctional Center ("Stateville"). Plaintiff claims that Defendants improperly designated him as a "Staff Assaulter," retaliated against him and infringed on his rights to practice his religion. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.

Plaintiff signed the complaint on October 28, 2015 while he was still confined at Stateville (Doc. 1, pp. 18-19). However, he did not mail the complaint to the Court until November 20, 2015 by which time he had been transferred to Hill (Doc. 1, pp. 20-22). In his pleading, Plaintiff describes events dating back to September 15, 2013 when Menard Defendant

Officer Davis issued an allegedly false disciplinary report against Plaintiff (Doc. 1, p. 4). Plaintiff asserts that Defendant Davis filed the report in retaliation for a grievance Plaintiff brought against him. Defendant Veath (Adjustment Committee) refused to call Plaintiff's witnesses at the disciplinary hearing. Defendant Veath recommended giving Plaintiff six months in segregation, but that punishment was reduced to five months by Defendant Harrington (Menard Warden).[1]

On September 23, 2013, Defendant Davis issued another "false and fabricated" disciplinary report in which he claimed that Plaintiff ran his shoulder into the officer (Doc. 1, p. 5). Defendant Veath found Plaintiff guilty of assaulting Defendant Davis after again refusing to call Plaintiff's witness. Plaintiff was punished with an additional 12 months in segregation as well as a 12-month restriction on his phone access. He alleges that the phone restriction denied him access to the courts, because he was unable to talk to his attorney (Doc. 1, p. 6). Plaintiff appealed this disciplinary action to Defendants Harrington and Atchinson, but they ignored his letters. Further, Defendant Atchinson failed to follow through on a verbal promise to look into the matter. Plaintiff told Defendant Atchinson that he had contacted the state police director's office regarding the allegedly improper disciplinary action. At that early point in Plaintiff's segregation term, neither Defendant Harrington, Defendant Atchinson, nor any other official notified Plaintiff that he would be subjected to further restrictions when, after completing his time in punitive segregation, he would be placed in the "Weapons Violator/Staff Assaulter Program" (Doc. 1, pp. 6-7).

---

[1] The September 15, 2013, and September 23, 2013, disciplinary charges filed by Defendant Davis are the subjects of an action filed by Plaintiff in this Court, now pending as *Ollie v. Davis*, Case No. 14-cv-608-MJR-SCW (S.D. Ill. filed May 27, 2014). Plaintiff's claim against Defendant Davis for unconstitutional retaliation (Count 1), and a state law claim for intentional infliction of emotional distress (Count 4) are proceeding in that action. His claim for deprivation of a liberty interest without due process, based on the segregation terms imposed on him for the two disciplinary infractions (Count 2), was dismissed with prejudice from that action.

On approximately June 14, 2014, Plaintiff filed a state court mandamus action in Randolph County, Illinois seeking "due process from prison officials" (he does not further describe this claim) (Doc. 1, p. 7). The trial court denied relief. On September 15, 2015 the appellate court affirmed that denial. *Id*. Plaintiff was transferred to Pontiac, allegedly in retaliation for his mandamus suit and because Defendants Atchinson and Harrington learned that Plaintiff had filed complaints with the Director of the Illinois State Police.

Plaintiff served the final 11 months of his segregation term in Pontiac where he claims he was subjected to "atypical and significant hardships," which included significant weight loss. Again, he was never informed during this time that he would be required to serve two more years in the Weapons Violator/Staff Assaulter Program.

On January 15, 2015, Plaintiff completed his 16 months in segregation at Pontiac. He was then given a black and white striped jumpsuit to distinguish him from the other inmates who wear light blue shirts and navy pants. He was issued a prison I.D. card with "Staff Assaulter" printed on both sides.

Plaintiff asserts that the administrative code does not allow or provide for the "Staff Assaulter" sanction (Doc. 1, p. 8). Defendants Atchinson and Godinez (former IDOC Director) created the Weapons Violator/Staff Assaulter program "as a way to retaliate and deter this type of behavior by inmates" after the Tamms Super-Max prison was closed. Plaintiff was not given any notice or a hearing before he was placed in this program, in violation of his due process rights. Further, he argues that his placement in this program for an additional two years beyond his punitive segregation term violates the prohibition against double jeopardy (Doc. 1, p. 14).

On approximately March 5, 2015, Plaintiff was transferred to Stateville, a maximum security prison. Defendants Hunter and Atchinson maintained his "Staff Assaulter" designation,

where he was made to wear the black and white jumpsuit and was separated from general population (Doc. 1, p. 9). Defendant Hunter denied Plaintiff's request for release from this program and refused to disclose the reasons for this decision or the names of those involved in making it (Doc. 1, p. 10). Plaintiff claims that he was thus denied access to the courts, because he was unable to file a grievance over his retention in the program.

As a result of his designation as a "Staff Assaulter," Plaintiff has been prevented from participating in Christian "congregated religious services" (Doc. 1, p. 11). The prison claims to provide access to such services through closed circuit television, but this is in fact not offered at Pontiac, Stateville, or Menard. Plaintiff also complains that he has been denied educational services and work assignments because of his "Staff Assaulter" classification. *Id*. Plaintiff also complains at length that his Freedom of Information Act requests for material relating to the Weapons Violator/Staff Assaulter Program, filed May 15, 2015, have been denied by the Illinois Department of Corrections (Doc. 1, pp. 11-13).

As relief, Plaintiff seeks a preliminary injunction against the Weapons Violator/Staff Assaulter Program (Doc. 1, p. 17). He further requests an order transferring him to a medium/moderate security facility and expunging his disciplinary conviction(s) and seeks compensatory and punitive damages.

## **Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted or seek monetary relief from an immune defendant. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable

person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this stage of review, the factual allegations of a pro se complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Based on the allegations of the complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:** Defendant Davis retaliated against Plaintiff for filing grievances on him, by issuing two false disciplinary reports for which Plaintiff was punished with a total of 17 months in punitive segregation;
>
> **Count 2:** Defendants Veath and Harrington deprived Plaintiff of a liberty interest without due process, when Defendant Veath failed to call Plaintiff's witnesses in his two disciplinary hearings, and punished him with a total of 17 months in segregation;
>
> **Count 3:** Defendants Atchinson and Harrington transferred Plaintiff from Menard to Pontiac Correctional Center, in retaliation for Plaintiff's filing of a state court lawsuit and a complaint with the Illinois State Police;
>
> **Count 4:** Defendants Atchinson, Harrington, Godinez, Hunter, and the IDOC deprived Plaintiff of a liberty interest without due process, when they placed and/or retained him in the Weapons Violator/Staff Assaulter Program at Pontiac and Stateville;
>
> **Count 5:** Defendants Hunter, Atchinson, Harrington, Godinez, and the IDOC violated Plaintiff's rights under the First Amendment and the RLUIPA by excluding him from participation in congregate religious services while he was designated as a "Staff Assaulter;"

> **Count 6:** Defendants Hunter, Atchinson, Harrington, and Godinez prevented Plaintiff from participating in educational services and work assignments while he was designated as a "Staff Assaulter;"
>
> **Count 7:** Defendant IDOC denied Plaintiff's rights under the Freedom of Information Act by refusing to disclose documents pertaining to the Weapons Violator/Staff Assaulter Program.

**Count 1** shall be dismissed without prejudice, as it duplicates the retaliation claim that is now proceeding against Defendant Davis in *Ollie v. Davis*, Case No. 14-cv-608-MJR-SCW (S.D. Ill. filed May 27, 2014). **Count 2** is also duplicative of the due process claim in *Ollie v. Davis*, Case No. 14-cv-608-MJR-SCW (also designated therein as Count 2) which was dismissed from that action with prejudice. Count 2 herein is based on the same factual underpinning and legal theory – Plaintiff argues that procedural violations in the disciplinary hearings on the September 15 and September 23, 2013 "false" disciplinary tickets deprived him of a liberty interest without due process. The Court's reasoning in dismissing the due process claim in Count 2 of *Ollie v. Davis* is fully discussed in the July 15, 2014, order at Doc. 6 in Case No. 14-cv-608-MJR-SCW. It applies equally to Plaintiff's claim in the case at bar. Because the identical claim was dismissed with prejudice from *Ollie v. Davis*, Case No. 14-cv-608, Plaintiff cannot revive or maintain the claim in Count 2 in this case. **Count 2** herein shall therefore be dismissed with prejudice.

As with his earlier complaint in Case No. 14-cv-608, Plaintiff claims that his inability to telephone his attorney during his time in segregation deprived him of access to the courts. However, he gives no further information to explain how his ability to bring or maintain any meritorious claim, defense or other court action was impaired by the phone restrictions. *See Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009); *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994). Therefore, he fails to state a claim for denial of access to the courts and any such

claim should be considered dismissed without prejudice.

Counts 3 and 5 shall proceed for further review at this early stage. Counts 4, 6, and 7, however, shall be dismissed for failure to state a claim upon which relief may be granted.

### Count 3 – Retaliatory Transfer

Plaintiff alleges that his transfer to Pontiac from Menard was prompted by the June 2014 mandamus action that he filed in state court to seek "due process." He also asserts that his complaint(s) to the Illinois State Police motivated Defendants Harrington and Atchinson to retaliate by moving him to Pontiac.

In the complaint Plaintiff filed in *Ollie v. Davis*, Case No. 14-cv-608, he included a timeline showing that the date of his transfer to Pontiac was March 5, 2014 (Doc. 1, pp. 23-24, in Case No. 14-cv-608, filed May 27, 2014).[2] Plaintiff's sworn factual statement in that complaint qualifies as a judicial admission, *see Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 872 (7th Cir. 2010) and the date of the pleading adds weight to the reliability of that statement. Based on this information, the Pontiac transfer predated Plaintiff's filing of the mandamus case. This sequence of events does not support a claim for retaliation based on the mandamus action. *See Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988) (complaint must set forth "a chronology of events from which retaliation may plausibly be inferred" (quoting *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987)).

However, it is plausible that Plaintiff's Illinois State Police complaint, apparently made in September or October 2013, may have triggered a retaliatory response. Ordinarily, prison officials may transfer inmates from one institution to another without implicating any constitutional concerns. A transfer thus would not be actionable in and of itself. However, if an action is taken in retaliation for the exercise of a constitutionally protected right, then it may

---
[2] That complaint also states that Plaintiff's mandamus action was filed in April 2014.

provide grounds for a civil rights claim under § 1983. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (discussing *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper.")); *see also Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (per curiam) (retaliatory transfer of a prisoner). Accordingly, Plaintiff's retaliation claim in **Count 3** against Defendants Harrington and Atchison based on his transfer to Pontiac in March 2014 shall proceed for further review.

### Dismissal of Count 4 – Weapons Violator/Staff Assaulter Program Designation

Plaintiff's designation as a "Staff Assaulter" carried some negative consequences – the requirement to wear distinctive clothing and a label on his I.D. card and a housing assignment that was apparently separate from the rest of the general population. However, other than the exclusion from certain privileges which shall be addressed in Counts 5 and 6, Plaintiff does not detail any conditions of his confinement that could be considered an "atypical or significant hardship" as a result of his Staff Assaulter classification.

When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). It is well established that no constitutional violation occurs when a prisoner is improperly classified. "[P]risoners possess neither liberty nor property in their classifications and prison assignments." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)); s*ee also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (due process protections are not implicated by prisoner classification); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison).

The Seventh Circuit has recognized that a prisoner "does not possess sufficient statutory or constitutional entitlement in his classification or eligibility for institutional programs to trigger due process protection." *Solomon v. Benson*, 563 F.2d 339, 342 (7th Cir. 1977) (citing *Moody*, 429 U.S. at 88). The *Solomon* court held that an inmate who sought to challenge his classification as a "special offender" had no right to procedural due process, notwithstanding the adverse effects on his eligibility for transfers, furloughs, and minimum security programs. *Solomon*, 563 F.2d at 343 (overruling in part *Holmes v. U. S. Bd. of Parole*, 541 F.2d 1243 (7th Cir. 1976)).

Plaintiff's complaint over his classification as a "Staff Assaulter" does not state a constitutional claim upon which relief may be granted in light of these authorities. Moreover, his argument that the Weapons Violator/Staff Assaulter Program is not authorized by the Illinois Administrative Code or prison regulations is unavailing. Even if Plaintiff is correct on that point, no constitutional rights are implicated merely because a prison policy does not comport with state law. A federal court does not enforce state law or state regulations. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001).

Plaintiff was released from punitive segregation before he was designated as a "Staff Assaulter" and he does not contend that the conditions of confinement under that label were comparable to those he had faced in punitive segregation. To be sure, certain privileges were limited or unavailable to him.[3] But these consequences that arose from his classification as a

---

[3] Plaintiff includes portions of the Weapons Violator/Staff Assaulter Program Orientation Manual (Doc. 1-1, pp. 9-12), which notes that inmates in this program are served two out of three daily meals in their cells; are offered recreation on the same basis as other inmates, but must stay in a separate yard from the general population inmates; are restricted to non-contact visits with a more limited schedule than general population; are allowed law library privileges on the same basis as other inmates; and may purchase items from the commissary with some restrictions.

"Staff Assaulter" do not appear to be distinguishable from the sort of disciplinary demotions and restrictions of privileges (e.g., demotion to C-grade, loss of commissary privileges or yard access) that fail to trigger due process concerns. *See, e.g.*, *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status and loss of commissary privileges). For these reasons, Plaintiff's placement in the "Staff Assaulter" program fails to state a constitutional claim upon which relief may be granted. Therefore, **Count 4** shall be dismissed with prejudice.

## Count 5 – Exclusion from Congregate Religious Services

An inmate is entitled to practice his religion "insofar as doing so does not unduly burden the administration of the prison." *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir. 1990); *see Al-Alamin v. Gramley*, 926 F.2d 680, 686 and nn. 3-5 (7th Cir. 1991) (collecting cases). A rule impinging on that right "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S.78, 89 (1987); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). Such interests include inmate security and the proper allocation of limited prison resources. *See O'Lone*, 482 U.S. at 348, 352-53; *Turner*, 482 U.S. at 90; *Al-Alamin*, 926 F.2d at 686. Additionally, the Religious Land Use and Institutionalized Persons Act (RLUIPA), which Plaintiff invokes in the complaint, provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a).

Plaintiff asserts that his freedom to practice his Christian faith has been substantially burdened, because he has been prohibited from participating in congregate services since his placement in the Staff Assaulter Program and because the promised access to such services via closed-circuit television has not been provided (Doc. 1, p. 11). He specifically ties these allegations to the period of time following his designation as a "Staff Assaulter" – which began on or about January 15, 2015. At that time, Plaintiff was confined at Pontiac. He was then transferred to Stateville in March 2015 where the deprivation continued. At this stage of the case, Plaintiff has sufficiently pled a First Amendment claim against Defendants Hunter, Atchinson, and former IDOC Director Godinez, who implemented the policy that restricted Plaintiff's access to religious services at Pontiac and Stateville. Count 5 shall therefore proceed against these Defendants with the limitations noted below as to Defendant Godinez.

As to Menard, Plaintiff states that no closed-circuit television religious program was offered there either – but Plaintiff was not yet in the Weapons Violator/Staff Assaulter Program while he was at Menard in disciplinary segregation. Plaintiff's brief statement, construed liberally, indicates that he was also denied access to religious services at Menard between September 2013 and his transfer to Pontiac in March 2014 – thereby stating a potential claim against Menard Warden Defendant Harrington. On that basis, Count 5 shall also proceed against Defendant Harrington at this juncture.

Plaintiff also names Defendant IDOC in connection with Count 5. However, Plaintiff seeks only monetary damages and declaratory relief for this claim (Doc. 1, p. 17). Plaintiff's requests for injunctive relief were specific: he wants a transfer to a prison with a medium/moderate security level, expungement of his disciplinary conviction and an injunction against the Weapons Violator/Staff Assaulter Program (Doc. 1, p. 17). The transfer request has

become moot now that Plaintiff has been moved to Hill which is a medium security prison. "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). *See also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995). The expungement request and requested injunction against the Weapons Violator/Staff Assaulter Program will not be considered further as Counts 2 and 4 shall be dismissed from this action. That leaves the prayer for declaratory judgment and damages as the only relief sought in connection with Count 5 in this complaint.

A declaratory judgment may be issued against the IDOC if Plaintiff prevails, but this state agency (which is not, as Plaintiff asserts, a municipality) cannot be ordered to pay damages in this civil rights action. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment). Accordingly, Count 5 may proceed at this stage against Defendant IDOC for declaratory relief only. For the same reason, insofar as Plaintiff sues Defendant Godinez in his official capacity, he may obtain only declaratory relief. Plaintiff may seek damages against Defendant Godinez only in his individual capacity.

**Dismissal of Count 6 – Exclusion from Educational Programs and Work Assignments**

It is well settled that there is no property or liberty interest in attending educational, vocational or rehabilitative courses while in prison and that institutions are not constitutionally required to provide these programs to inmates. *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th

Cir. 2000) (prisoner had no 14th Amendment due process claim for being transferred to a prison where he could no longer enroll in programs that might earn him earlier release); *Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1996); *Garza v. Miller*, 688 F.2d 480, 486 (7th Cir. 1982), *cert. denied* 459 U.S. 1150 (1983). Similarly, while a prisoner may be required to work while in prison, *see Vanskike v. Peters*, 974 F.2d 806, 809, 812 (7th Cir. 1992), *cert. denied*, 507 U.S. 928 (1993), an inmate does not have a constitutionally protected property or liberty interest in having or keeping a prison job. *See DeWalt v. Carter,* 224 F.3d 607, 613 (7th Cir. 2000). As such, Plaintiff's constitutional rights were not violated when he was excluded from educational programs or work assignments due to his designation as a Staff Assaulter. Therefore, **Count 6** shall be dismissed with prejudice.

### Dismissal of Count 7 – Freedom of Information Act

Plaintiff filed his Freedom of Information request directed to the IDOC under Illinois state law, not federal law. Accordingly, any remedy that may be available to him for an alleged violation of the Illinois Freedom of Information Act must be pursued through the state administrative appeal process and/or an action filed in Illinois state court. *See* 5 ILL. COMP. STAT. 140/1 *et seq*. Plaintiff was advised of those rights in correspondence from the Illinois Attorney General's office which he includes among his exhibits (Doc. 1-1, p. 29). Contrary to Plaintiff's assertion, no federal constitutional claim arises from his inability to obtain a response to his information request. **Count 7** shall thus be dismissed without prejudice to Plaintiff's ability to pursue his claim in the appropriate state forum.

### Pending Motion

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

**Disposition**

COUNT 1 is **DISMISSED** without prejudice as duplicative of Plaintiff's claim in *Ollie v. Davis*, Case No. 14-cv-608-MJR-SCW (S.D. Ill.). **COUNT 2** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted, and in accordance with the dismissal of a duplicate claim in *Ollie v. Davis*, Case No. 14-cv-608-MJR-SCW (S.D. Ill.). **COUNTS 4 and 6** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. **COUNT 7** is **DISMISSED** without prejudice for failure to state a federal claim upon which relief may be granted.

Defendant **DAVIS** is **DISMISSED** from this action without prejudice. Defendant **VEATH** is **DISMISSED** from this action with prejudice.

**COUNTS 3 and 5** shall proceed for further review. With reference to these claims, the Clerk of Court shall prepare for Defendants **ILLINOIS DEPARTMENT of CORRECTIONS, GODINEZ, ATCHINSON, HARRINGTON,** and **HUNTER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending

the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Philip M. Frazier** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Frazier for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a

stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 5, 2016**

s/ STACI M. YANDLE
United States District Judge