IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT OLLIE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 15-CV-1313-SMY-RJD |
| ILLINOIS DEPARTMENT OF CORRECTIONS, MICHAEL ATCHINSON, SALVADOR GODINEZ, RICHARD HARRINGTON, TIMOTHY VEATH, RYAN DAVIS, and DARRIN HUNTER, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Robert Ollie, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), brings this lawsuit pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"), Pontiac Correctional Center ("Pontiac"), and Stateville Correctional Center ("Stateville"). Plaintiff alleges that he was intentionally transferred in retaliation for filing a grievance and that he was improperly prohibited from attending congregative religious services (Doc. 37).

Plaintiff proceeds on two Counts: Count I is Plaintiff's retaliation claim against Defendants Richard Harrington and Michael Atchison based on his transfer to Pontiac. Count II is asserted against Defendants Richard Harrington, Salvador Godinez, and Darrin Hunter for denying Plaintiff access to congregative religious services, in violation of his right to practice his religion under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") (Doc. 37). This matter is currently before the Court on Plaintiff's Motion for Summary Judgment (Doc. 56) and the Motion for Summary Judgment filed by Defendants (Doc.

59).

Plaintiff filed a response to Defendants' motion in which he states that he does not oppose Defendants' Motion for Summary Judgment with respect to Plaintiff's retaliatory transfer claim in Count I, or the Religious Land Use and Institutionalized Persons Act (RLUIPA) claim in Count II (Doc. 62 at 2). Accordingly, the Court finds that Defendants Harrington and Atchison are entitled to judgment as a matter of law on Plaintiff's retaliatory transfer claim and Defendants Harrington, Godinez, and Hunter are entitled to judgment as a matter of law on the RLUIPA claim.

For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED**, and Defendants' Motion for Summary Judgment is **GRANTED** in its entirety.

## FACTUAL BACKGROUND

Plaintiff Robert Ollie was an inmate at Menard from April 2010 through March 2014 (Plaintiff's Deposition, Doc. 60-4 at 9, 17). On September 15, 2013, an Incident Disciplinary Report was filed by Correctional Officer Ryan Davis and Ollie was placed in segregation (*Id.* at 16). Ollie filed an emergency grievance against Officer Davis on September 15, 2013 (*Id.* at 14). On September 17, 2013, Ollie was found guilty of three offenses and was disciplined with six months C grade, six months commissary restriction, and five months segregation (Ollie's Disciplinary Reports, Doc. 60-8 at 6).

On or about September 23, 2013, a subsequent disciplinary report was filed and Ollie was placed in the Staff Assaulter Program (Doc. 60-4 at 16, 25). On October 4, 2013, the adjustment committee held a hearing concerning the September 23, 2013 incident and found Ollie guilty of assaulting staff and intimidation or threats (Doc. 60-8 at 2). The adjustment committee disciplined Ollie with one year C Grade, one year segregation, one year commissary restriction, and six months contact visit restriction (*Id.*).

Ollie was subsequently transferred to Pontiac on or about March 5, 2014 (Doc. 60-4 at 17). He was released from segregation on or about January 15, 2015, but remained in the Staff Assaulter Program (*Id.* at 34). Ollie was again transferred to Stateville on March 6, 2015 (*Id.* at 38). He was released from the Staff Assaulter Program and transferred to Hill Correctional Facility ("Hill") on November 5, 2015, where he is currently incarcerated (*Id.* at 43).

Between September 2013 and his transfer in March 2014, Ollie was in segregation at Menard (*Id.* at 17). Prior to being placed in segregation, he would regularly attend Christian worship services (*Id.* at 28). Once placed in segregation, Ollie was denied the opportunity to attend congregative worship services (*Id.*). He was unable to access the worship services via closed circuit television (*Id.* at 31-32). Ollie was allowed a Bible and religious tracts (*Id.* at 32) and was permitted to talk about religion with volunteers from churches (*Id.* at 32-33).

Upon being transferred to Pontiac, Ollie was again placed in segregation and denied the opportunity to attend congregative worship services (*Id.* at 33). He was unable to access the worship services via closed circuit television while at Pontiac (Id. at 36). Ollie was allowed to have his Bible while at Pontiac and was allowed to discuss his faith with volunteers from churches while at Pontiac (*Id.* at 35).

Ollie remained in the Staff Assaulter Program and was denied the opportunity to attend congregative worship services when he was transferred to Stateville (*Id.* at 38-39). He was again unable to access worship services via closed circuit television (*Id.* at 40). Ollie was allowed his Bible while at Stateville (*Id.* at 41). Volunteers that came into Stateville from churches were not given enough time to speak with inmates in the Staff Assaulter Program. (*Id.* at 41-42). Upon being removed from the Staff Assaulter Program and transferred to Hill, Ollie resumed attending congregative religious services once per week (*Id.* at 44).

## LEGAL STANDARD

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### Count One - Retaliatory Transfer

Defendants Atchison and Harrington assert that they are entitled to summary judgment because Ollie failed to meet his burden of producing evidence that his First Amendment protected activity was at least a motivating factor in Defendants' alleged retaliation. Ollie does not oppose summary judgment with respect to his retaliatory transfer claim. Accordingly, the Court grants Defendants' Motion for Summary Judgment on Count I.

### Count Two – Denial of Access to Religious Services

#### RLUIPA

Defendants assert the Ollie's Religious Land Use and Institutionalized Persons Act

("RLUIPA") claim is moot. The only relief Ollie could potentially obtain on this claim is an injunction or a declaration, which would be moot given that Ollie is currently housed at Hill Correctional Center and has access to religious congregational services. Again, because Ollie does not oppose Defendants' motion with respect to his RLUIPA claim, Defendants' motion is granted on Ollie's claim of RLUIPA violations.

**First Amendment**

While inmates retain First Amendment rights, including the free exercise of religion, such rights must coexist with the demands of prison discipline and legitimate institutional objectives. *Williams v. Lane*, 851 F.2d 867, 877 (7th Cir. 1988). An inmate's right to exercise his religious beliefs is balanced against the legitimate goals of the institution. *Hadi v. Horn*, 830 F.2d 779, 783 (7th Cir. 1987). As a result, an inmate is not entitled to practice every aspect of his religion. *Tarpley v. Allen County, Indiana*, 312 F.3d 895, 898 (7th Cir. 2002).

Prison regulations that allegedly violate an inmate's constitutional rights are judged under a less restrictive test than that typically applied to alleged infringements of fundamental constitutional rights. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). Accordingly, restrictions that infringe upon an inmate's exercise of religion will be upheld if they are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Relevant factors include: (1) whether a valid, rational connection exists between the regulation and a legitimate government interest, (2) whether there are other means of exercising the right in question for prisoners, (3) the impact accommodating the claimed right would have on guards, other inmates, and prison resources, and (4) the availability of obvious and easy alternatives to the regulation. *Id*. at 89-90.

Prisons have a legitimate penological interest in maintaining security. *Tarpley*, 312 F.3d at 898; *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991) and the inmate has the burden

of disproving the validity of a challenged prison regulation. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

As a general principle, federal courts afford deference to the decisions of prison administrators. *Turner*, 482 U.S. at 85. While the Seventh Circuit has previously found that the denial of communal religious services and religious counseling and instruction constitutes a First Amendment violation, the Court's ruling was made under circumstances when the inmates were in protective custody for their own safety and the rationale advanced by the prisons was that communal services would burden the staff and programs in protective custody. *Williams v. Lane*, 851 F.2d 867, 877-78 (1988). However, subsequent Seventh Circuit decisions reaffirm the *Turner* principle that prison regulations alleged to infringe upon constitutional rights need only be reasonably related to a legitimate penological interest. See, e.g., *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005); *Tarpley*, 312 F.3d at 898.

Here, to prevail in his free exercise claim, Ollie must establish that a central religious belief or practice was "burdened in a significant way." *Kaufman*, 419 F.3d at 683. At issue is Ollie's inability to attend congregative religious services while placed in disciplinary segregation and the Staff Assaulter Program. It is undisputed that while in the Staff Assaulter Program, Ollie and other inmates with the staff assaulter designation were not afforded the opportunity to attend congregative religious services. That said, legitimate penological interests exist for not permitting inmates with the staff assaulter designation to attend congregative activities. Inmates are given the staff assaulter designation for disciplinary reasons, including threatening or assaulting prison staff. Given this demonstrated propensity for violent or adverse behavior, there are security and safety concerns underlying the policy of not allowing inmates with the staff assaulter designation to attend congregative activities.

Moreover, consistent with *Turner*, Ollie also had alternative means of exercising his religious beliefs. Individual religious counseling was made available to inmates with the staff assaulter designation. Ollie acknowledges that he had access to visits from the prison chaplain or other religious volunteers during their weekly visits to segregation while at Menard and Pontiac. There is a dispute as to whether Ollie had access to watch worship services via closed-circuit television. Taking the facts in the light most favorable to the Ollie, the Court presumes he did not have access to worship services via close-circuit television. Ollie acknowledges he had access to his Bible and religious tracts for personal religious study at Menard, Pontiac and Stateville. Thus, there were alternative means available to Ollie for the exercise of his religious beliefs, albeit on an individualized basis rather than in a group setting. Further, it is not clear that communal worship is central to the practice of Ollie's generalized religious beliefs.

Because legitimate penological interests exist for not permitting staff assaulter designated inmates to attend congregative activities, and Ollie had alternative means of exercising his beliefs, Defendants are entitled to summary judgment as to this claim.

**Qualified Immunity**

Defendants also assert that they are protected by qualified immunity on Ollie's claim. This issue need not be considered as the Court has already concluded that the evidence, when viewed in a light most favorable to Ollie, does not establish a genuine issue of material fact as to whether Defendants violated Ollie's First Amendment rights to the free exercise of religion.

### OLLIE'S MOTION FOR SUMMARY JUDGMENT

Ollie asserts that he is entitled to summary judgment as to Count II against Defendants Harrington and Hunter because Defendants have failed to produce any evidence of a legitimate penological interest in denying Ollie access to congregative religious services. As noted above, Defendants have put forth safety and security concerns that rise to the level of a legitimate

penological interest in denying Ollie access to congregative religious services. Therefore, Ollie's Motion for Summary Judgment is denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. 56) is **DENIED,** and the Motion for Summary Judgment filed by Defendants (Doc. 59) is **GRANTED.** Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE.** As no claims remain, the Clerk of Court is **DIRECTED** to enter judgment accordingly and to close this case.

**IT IS SO ORDERED.**

**DATED: January 16, 2018**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**